UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| GROVES INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22-cv-50154 |
| | ) | |
| vs. | ) | Judge Iain D. Johnston |
| | ) | |
| R.C. BREMER MARKETING ASSOCIATES | ) | |
| INC., JOSEPH FALK, CHRISTOPHER SOUCEK, | ) | |
| DAVID REINKE, DAVID LUDWIG, JEFFREY | ) | |
| ALEXANDER, LISA FOX, CODY GUNTER, | ) | |
| KIMBERLY FALK, JESSICA ROBKE, BRIAN | ) | |
| BOND, RENN HOLLANDER, THOMAS | ) | |
| MARTIN, JULIANN O'TOOLE CORDES, | ) | |
| GREGG LADD, CHRISTOPHER SHEPPARD | ) | |
| and MIKE NOCHEVICH, | ) | |
| | ) | |
| Defendants. | ) | |

---

**ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANTS'
R.C. BREMER MARKETING ASSOCIATES, INC., JOSEPH FALK, CHRISTOPHER
SOUCEK, DAVID REINKE, DAVID LUDWIG, JEFFREY ALEXANDER, LISA FOX,
CODY GUNTER, KIMBERLY FALK, JESSICA ROBKE, BRIAN BOND, GREGG
LADD, AND MIKE NOCHEVICH**

---

Defendants R. C. Bremmer Marketing Associates, Inc., Joseph Falk, Christopher Soucek,

David Reinke, David Ludwig, Jeffrey Alexander, Lisa Fox, Cody Gunter, Kimberly Falk, Jessica

Robke, Brian Bond, Gregg Ladd, and Mike Nochevich ("Defendants"), by and through its

attorneys, von Briesen & Roper, s.c., answer Groves Incorporated's ("Groves") Complaint as

follows:

-1-

**INTRODUCTION[1]**

1.      This matter arises from the Defendants efforts to misappropriate, and convert, Plaintiff's proprietary and confidential customer and potential customer data coupled with active engagement in a libelous and slanderous campaign to discredit Plaintiff in the marketplace, for the purpose of profiting at Plaintiff's expense.

   **ANSWER:**   Deny the allegations of paragraph 1.

2.      Defendants did not merely divert generic customer lists or leads that they independently developed.

   **ANSWER:**   Deny the allegations of paragraph 2.

3.      Rather, Defendants, through their relationship with certain corporate officers and employees at Groves, engaged in an insidious scheme to misappropriate and divert proprietary data on existing Plaintiff's customers and prospective customers, including, but not limited to, customer credit, price list, potential and existing products, lead times to supply products, vendors, and needs and requirements of customers, such as equipment needs, timing of equipment needs, and price points and pricing arrangements needed, as well as discount structures with distributors and end-users of the products ("Customer Needs and Requirements.").

   **ANSWER:**   Deny the allegations of paragraph 3.

4.      The Customer Needs and Requirements had not only been developed over the course of forty-two years in business but had been fastidiously and jealously maintained by Plaintiff within Plaintiff's heavily guarded customer databases, and repositories.

---

[1] For the Court's and the parties' convenience, this Answer incorporates the Complaint's headings and subheadings, although Defendants assert those headings and subheadings are not separate allegations and therefore do not warrant any response. If a response is required, the Defendants deny any allegations in the headings or subheadings.

**ANSWER:** Lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 4, and therefore deny the allegations of paragraph 4.

5. Such customer databases, and repositories, are organized and searchable by, among other things, customer, and potential customer name, contact information, certain needs, and requirements. Accordingly, such customer database, and repositories, do not just constitute a list of customers (albeit it is a grouping of customers and potential customers for Groves' product line), but a roadmap to Groves' customer, and potential customer intelligence.

**ANSWER:** Lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 5, and therefore deny the allegations of paragraph 5.

6. Because the Customer Needs and Requirements had been gathered through forty-two years in business relations with the fire safety industry, and thereafter, collected, culled, and organized into discrete searchable customer databases and repositories, the Customer Needs and Requirements constitute protectable trade secrets.

**ANSWER:** Deny the allegations of paragraph 6.

7. Defendants, for their part, comprise a sales organization which, for a period of no less than twenty-five years, sold products for the Plaintiff to varying sectors of the United States .

**ANSWER:** Admit that Defendant RC Bremer is a sales organization that sold products for Plaintiff Groves and, in that capacity, Defendant RC Bremer earned fees from commissions from the sale of such fire safety equipment, but deny the remaining allegations of paragraph 7.

8. Despite their long, and profitable, relationship with Plaintiff whereby Defendants earned substantial commissions, over the last several years, Defendants chose to ingratiate themselves and induce certain corporate insiders of Plaintiff to permit them access to the Customer Needs and Requirements.

**ANSWER:** Deny the allegations of paragraph 8.

9. Ultimately, armed with the Customer Needs and Requirements, Defendants forged a relationship with Circul-Air – *i.e.*, a manufacturer of fire safety products.

**ANSWER:** Deny the allegations of paragraph 9.

10. By way of that unholy alliance, Circul-Air used the Customer Needs and Requirements provided to them by Defendants to compete against and sell product to the marketplace that it would not otherwise have been able to sell because such sales would have been made by Plaintiff.

**ANSWER:** Lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 10, and therefore deny the allegations of paragraph 10.

11. By virtue of this scheme, and by, and through, other channels and sellers of fire safety products, Defendants continue to monetize the Customer Needs and Requirements for their benefit and to the exclusion of Plaintiff.

**ANSWER:** Deny the allegations of paragraph 11.

### JURISDICTION

12. This Court has jurisdiction over Plaintiff's Defense of Trade Secrets Act claim pursuant to 28 U.S.C. § 1331.

**ANSWER:** Deny the allegations of paragraph 12.

13. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the remainder of Plaintiff's claims because these claims closely relate to the Plaintiff's Defense of Trade Secrets Act claim, having arisen from a common nucleus of operative facts, such that all claims form part of the same case or controversy.

**ANSWER:** Deny the allegations of paragraph 13.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because (i) Defendants do business in and are involved in the marketing and selling of products in Illinois, (ii) upon information and belief, many of Defendants' personnel are a residents of Illinois, (iii) Defendants worked with the Plaintiff in the State of Illinois for the purpose of obtaining Plaintiff's confidential information, and proprietary data, as discussed herein, (iv) the use of the misappropriated proprietary data, and confidential information originated in Illinois, and (v) substantial economic benefits have been conferred upon the Defendants because of the misappropriation, conversion, and other misuses, of transactions within the State of Illinois which economic benefits would otherwise have been conferred upon Plaintiff.

        **ANSWER:**     Deny the allegations of paragraph 14.

## PARTIES

15.     Plaintiff is a well-known wholesaler of certain equipment supporting the fire and safety industries. Groves has been a leader in that marketplace since 1980, building critical goodwill across the United States with certain distributors. Groves is a Woodstock, Illinois based corporation.

        **ANSWER:**     Admit Groves is a Woodstock, Illinois based corporation but deny remaining allegations in paragraph 15.

16.     Defendant R.C. Bremer is an Illinois corporation with a principal place of business in Wisconsin. Defendant R.C. Bremer is a Manufacturers' Representative selling Industrial Safety and Fire-Fighting Equipment.

        **ANSWER:**     Admit allegations in paragraph 16.

17.     Defendant Joseph Falk resides at 8200 65th Place, Kenosha, Wisconsin.

        **ANSWER:**     Admit allegations in paragraph 17.

18.     Defendant Christopher Soucek resides at 2381 Heather Ridge Drive, Normal, Illinois.

**ANSWER:**     Deny allegations in paragraph 18.

19.     Defendant David Reinke resides at N8998 Willow Road, Watertown, Wisconsin.

**ANSWER:**     Admit allegations in paragraph 19.

20.     Defendant David Ludwig resides, on information and belief, in Chicago, Illinois.

**ANSWER:**     Deny allegations in paragraph 20.

21.     Defendant Jeffrey Alexander resides at 10519 Forest Hill Drive, Wexford, Pennsylvania.

**ANSWER:**     Admit allegations in paragraph 21.

22.     Defendant Lisa Fox resides at 13540 Lake Ridge Lane, Fishers, Indiana.

**ANSWER:**     Admit allegations in paragraph 22**.**

23.     Defendant Cody Gunter resides at 7714 Keller Way, Crestwood, Kentucky.

**ANSWER:**     Admit allegations in paragraph 23.

24.     Defendant Kimberly Falk resides at 3851 20th Avenue South, Minneapolis, Minnesota.

**ANSWER:**     Admit allegations in paragraph 24.

25.     Defendant Jessica Robke resides at 2405 NW Osage Circle, Riverside, Missouri.

**ANSWER:**     Admit allegations in paragraph 25.

26.     Defendant Brian Bond resides, on information and belief, in Indianola, Iowa.

**ANSWER:**     Admit Defendant Brian Bond resides in Indianola, Iowa, but deny remaining allegations in paragraph 26

27.     Defendant Gregg Ladd resides at 15515 Sugar Bottom Road, Ste. Genevieve, Missouri

**ANSWER:**     Admit allegations in paragraph 27.

28.     Defendant Thomas Martin resides at 2108 East San Juan Avenue, Phoenix, Arizona

**ANSWER:** Lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 28, and therefore deny the allegations of paragraph 28.

29. Defendant Juliann O'Toole Cordes resides at 2752 Liberty Lakes, Wauconda, Illinois.

**ANSWER:** Lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 29, and therefore deny the allegations of paragraph 29.

30. Defendant Renn Hollander resides at 924 Wiltshire Drive, McHenry, Illinois.

**ANSWER:** Lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 30, and therefore deny the allegations of paragraph 30.

31. Defendant Christopher Sheppard resides at 2007 Hemlock Drive, McEnery, Illinois.

**ANSWER:** Lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 31, and therefore deny the allegations of paragraph 31.

32. Defendant Mike Nochevich resides at 4128 22nd Avenue, Kenosha, Wisconsin.

**ANSWER:** Admit allegations in paragraph 32.

33. Defendants Joseph Falk, Christopher Soucek, David Reinke, David Ludwig, Jeffrey Alexander, Lisa Fox, Cody Gunter, Kimberly Falk, Jessica Robke, Brian Bond, Gregg Ladd, Thomas Martin, Juliann O'Toole Cordes, Renn Hollander, Christopher Sheppard and Mike Nochevich (collectively, "Individual Defendants") are individual defendants that participated actively in the scheme to misappropriate Plaintiff's Customer Needs and Requirements, from Woodstock, Illinois, and benefit from the Customer Needs and Requirements maintained within Woodstock, Illinois, as well as benefit from such Customer Needs and Requirements in Woodstock, Illinois to the detriment of Plaintiff in Woodstock, Illinois.

**ANSWER:** Deny allegations contained in paragraph 33.

34.     Individual Defendants worked, at all relevant times, for the benefit, on behalf, and as employees, or agents, of R.C. Bremer. The scope of such agency did not extend to defamation, slander, tortious interference with contract, and/or misappropriation of trade secrets, and therefore, the Individual Defendants are liable for their participation, jointly and severally, for the misconduct asserted in this Complaint.

**ANSWER:**     Deny allegations in paragraph 34.

35.     R.C. Bremer Marketing Associates ("R.C. Bremer"), pursuant to a Sales Representative Agreement, had been an independent contractor of Groves since 1995, and, in that capacity, had been charged with selling Groves' products to Groves' customers within the fire and safety industry. See, Exhibit ("Ex.") A.

**ANSWER:**     Admit R.C. Bremer had been an independent contractor to Groves and, pursuant to a Sales Representative Agreement, sold Groves products to the fire and safety industry, but deny remaining allegations contained in paragraph 35.

36.     Because of the close working relationship between R.C. Bremer and Groves, over the years, distributors within the marketplace viewed R.C. Bremer, and Individual Defendants, as an entity with integral knowledge of Groves, its business practices, and its finances and conditions. Nonetheless, Groves did not disclose, or provide access to the Customer Needs and Requirements housed within customer databases and repositories to Defendants.

**ANSWER:**     Lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 36, and therefore deny the allegations of paragraph 36.

37.     Groves maintained the Customer Needs and Requirements in customer databases, and repositories, which have been fastidiously and jealously protected from the marketplace by, among other things, IT and Cyber Security Policies.

**ANSWER:** Lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 37, and therefore deny the allegations of paragraph 37.

38. The customer databases, and repositories, are double password protected, and persons using such customer databases, and repositories, are, always, supervised and bound by confidentiality agreements, and restricted access procedures, which only permits access to that information reasonably necessary perform their function.

**ANSWER:** Lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 38, and therefore deny the allegations of paragraph 38.

39. Further, all access to the customer databases, and repositories, are monitored by management, and outside third-party vendors.

**ANSWER:** Lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 39, and therefore deny the allegations of paragraph 39.

40. Groves had an understanding with R.C. Bremer, and the Individual Defendants, that any such information shared with it would be used for the benefit, exclusively of Groves. R.C. Bremer, and the Individual Defendants, expressed and agreed to that understanding. Such information did not include access to customer databases, and repositories, or the composite and searchable information retained thereon.

**ANSWER:** Deny allegations in paragraph 40.

41. Unlike the Defendants, John Groves, Brent Hostler, Julie O'Toole Cordes, Tom Martin, Renn Hollander, Thomas Martin, Juliann O'Toole Cordes, Christopher Sheppard, and Chris Sheppard (the "Insider Group") had all been former senior employees and/or managers of Groves, with various levels of access to Groves' Customer Needs and Requirements, as maintained in their customer databases, and repositories.

**ANSWER:** Lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 41, and therefore deny the allegations of paragraph 41.

42. Upon information and belief, Defendants and the foregoing individuals acted, individually and collectively, to violate their fiduciary obligations, and confidentiality provisions with Groves, such that Defendants, ultimately, received the benefit of jealously guarded customer needs and requirements from Groves' customer databases.

**ANSWER:** Deny allegations contained in paragraph 42.

43. Lest there be any doubt, not only did Defendants and the Insider Group misappropriate the Customer Needs and Requirements, but weaponized that information in the marketplace for their own economic gain, and to the extreme detriment of Groves.

**ANSWER:** Deny allegations contained in paragraph 43.

44. Said another way, the theft of the Customer Needs and Requirements has turned Groves' advantage in the marketplace on its head because now such Customer Needs and Requirements are being weaponized by Bremer for the benefit of other providers of fire safety equipment, such as Circul-Air.

**ANSWER:** Deny allegations contained in paragraph 44.

45. Since choosing to terminate its twenty-five year relationship and using the Insider Group as a conduit to misappropriate Plaintiff's Customer Needs and Requirements, Defendants sought to sideline Groves from the marketplace.

**ANSWER:** Deny allegations contained in paragraph 45.

46. R.C. Bremer and Individual Defendants commenced a campaign to defame Groves in the marketplace, and thereafter, weaponize its knowledge of Groves, within the fire and safety marketplace, to compete aggressively against Groves. Specifically, within a constellation of

markets (including, but not limited to, Minnesota, Indiana, Wisconsin, Michigan, Iowa, North Dakota, South Dakota, Nebraska, Kansas, Illinois, Kentucky, Pennsylvania, West Virginia and certain Northeastern territories) R.C. Bremer, and Individual Defendants, have been misrepresenting to distributors that Groves is, or imminently will be, 'out of business,' and, therefore, such distributors should terminate their relationship with Groves and commence a relationship with Circul-Air; a fire and safety product manufacturer.

**ANSWER:** Deny allegations contained in paragraph 46.

47. Because of the longstanding association, R.C. Bremer and Individual Defendants, apparently, Defendants have been able to convince certain distributors of this lie, resulting in lost customers (i.e., distributors and users) to Groves.

**ANSWER:** Deny allegations contained in paragraph 47.

48. Alongside this scheme to defame Groves (i.e., convince the marketplace they are financially unsound and 'going out of business) such that distributors and end-users seek out Groves' competitors, Defendants, as a sales organization, weaponize the Customer Needs and Requirements to close transactions with customers that, in the ordinary course would have been Groves' customers, for the benefit of Circul-Air and others.

**ANSWER:** Deny allegations contained in paragraph 48.

49. Defendants, further, informed myriad members of the marketplace that Circul-Air can provide the same quality, and style, of product, such as lockers, dryers, and extractors, at the price points and within the time frames needed, and that such market participants should no longer seek out their needs from Groves, because they are going out of business.

**ANSWER:** Deny allegations contained in paragraph 49.

50.    Because the Customer Needs and Requirements had been relayed through the Insider Group to R.C. Bremer, who, then, informed Circul-Air of such needs, and requirements, of Groves' customers, Circul-Air has been able to work, collectively, with R.C. Bremer, to compete against Groves in the marketplace, using the Customer Needs and Requirements developed over forty-years by Groves, and jealously protected from the marketplace; and, simultaneously, press that this is cool insidiously gained advantage because of their illict lies concerning Groves financial footing.

**ANSWER:**    Deny allegations contained in paragraph 50.

51.    Therefore, to destroy a forty-two year in the making enterprise, R.C. Bremer, on the one hand, cozied up to the Insider Group to obtain, and weaponize, the Customer Needs and Requirements against Groves in the marketplace, and, on the other, shared such Customer Needs and Requirements with Circul-Air so that collectively, Circul-Air and Defendants, profited in gross sales and commissions, respectively.

**ANSWER:**    Deny allegations contained in paragraph 51.

52.    Groves' losses, because of the foregoing lies, as well as misappropriations, is ongoing, systemic, and, because of the dilution prevalent and rapid spread of the Customer Needs and Requirements within the marketplace, has, and continues to, result in irreparable harm to Groves (i.e., dilution of the secrecy of its most critical market advantage).

**ANSWER:**    Deny allegations contained in paragraph 52.

53.    R.C. Bremer's, and Individual Defendants', conduct violates myriad state laws against misappropriation, interference with contracts and prospective economic relations, unfair competition, as well as federal laws and state against misappropriation of trade secrets (which, in turn, provide for not only damages, but trebled damages and counsel fees). Accordingly, Groves

sent R.C. Bremer correspondence that it, and anyone working on its behalf, immediately cease and desist slandering Groves, issue retractions of any prior statements that attempted to cause anyone to believe that Groves is experiencing financial hardship and cease use of the Customer Needs and Requirements.

**ANSWER:** Admit that Groves sent Defendant R.C. Bremer a correspondence requesting it immediately cease and desist slandering Groves, issue retractions of any prior statements that attempted to cause anyone to believe that Groves is experiencing financial hardship, but deny all remaining allegations contained in paragraph 53.

54. Remarkably, Defendants feigned ignorance and demanded specific instances of their misdeeds.

**ANSWER:** Admit that Defendant R.C. Bremer demanded to know specifics, but deny all remaining allegations in paragraph 54.

55. Groves responded with such specifics, including, but not limited to:

a. On or about March 14, 2022, Jesse Moy from Groves Incorporated had been contacted by Alex Air Apparatus, who conveyed that R.C. Bremer conveyed, at a "show in Wisconsin" that "Groves was going out of business" and attributing the publishing of such information to R.C. Bremer.

**ANSWER:** Deny allegations that Groves responded to Defendants with specifics and deny allegations contained in paragraph 55 (a).

b. On or about March 14, 2022, WS Darley contacted Mr. Moy, conveying precisely the same false information about Groves going out of business and attributing the publication of such information to R.C. Bremer.

**ANSWER:** Deny allegations that Groves responded to Defendants with specifics and deny allegations contained in paragraph 55 (b).

c. On or about March 11, 2022, Public Safety Store forwarded correspondence to Jesse Moy that Public Safety Store received from Cody Gunter at R.C. Bremer, wherein he wrote "My company has decided to part ways with Groves after 30 years and move to Circul-Air (who makes Groves units). I know you all don't sell much of Groves but, I wanted to see if you'd be interested in a quick meeting next week to speak about Circul-Air. Maybe its something you all would be interested in carrying. I also rep Tempest, Leatherhead, and others if you have questions on them." Unsurprisingly, this drew a follow-up call from Groves to Public Safety Store. Public Safety Store advised that R.C. Bremer, as part of its sales campaign, similarly informed Public Safety Store over the telephone that Groves had been "headed for bankruptcy" and would be unable to continue to service its account.

**ANSWER:** Deny allegations that Groves responded to Defendants with specifics and deny allegations contained in paragraph 55 (c).

d. On or about March 17, 2022, Jesse Moy had a conversation with Kaza Fire Equipment, which stated explicitly, that it had spoken R.C. Bremer on the telephone, earlier that week, who advised him that Groves Incorporated "is going out of business," that "former employees of Groves are now all working for Circul-Air," that "Groves off brand cheap extractor is inferior to the extractors Circul-Air offers" and that "when Groves' contract with Pacific Helmets expires, Circul-Air will be picking up the line to meet that master distributor's needs."

**ANSWER:** Deny allegations that Groves responded to Defendants with specifics and deny allegations contained in paragraph 55 (d).

e. On or about the same time period that this slanderous campaign had been ongoing, Groves had communications with Air One Equipment during which it asked if Groves had been going out of business, which, apparently had been related to Air One Equipment by RC Bremer personnel.

**ANSWER:** Deny allegations that Groves responded to Defendants with specifics and deny allegations contained in paragraph 55 (e).

f. On or about May 13, 2022, upon information and belief, R.C. Bremer informed Hoosier Fire Equipment not to sell Groves anymore, because it is going out of business, and rather should divert its business to Circul-Air.

**ANSWER:** Deny allegations that Groves responded to Defendants with specifics and deny allegations contained in paragraph 55 (f).

56. In each such communication, Defendants' used the Customer Needs and Requirements, as well as acted with the malicious intention of causing distributors and end-users to cease their business operation with Groves such that Defendants could broker a replacement relationship with Circul-Air (or, others) for commission.

**ANSWER:** Deny allegations contained in paragraph 56.

**COUNT ONE**
**(Federal Misappropriation of Trade Secrets)**
**(18 U.S.C. § 1839)**

57. Plaintiff repeats and realleges each and every allegation contained in the prior paragraphs of this Complaint as if fully set forth at length herein.

**ANSWER:** Answering paragraph 57, Defendants incorporate responses to the prior paragraphs as though set forth in full herein.

-15-

58.     The actions of Defendant, as set forth herein, constitutes misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1839.

**ANSWER:** Deny allegations contained in paragraph 58.

59.     Plaintiff possessed confidential information, including but not limited to, the Customer Needs and Requirements that constituted trade secrets.

**ANSWER:** Deny allegations contained in paragraph 59.

60.     Such information is used in connection with Plaintiff's products and services which are offered across the country and is central to Plaintiff's business viability.

**ANSWER:** Deny allegations contained in paragraph 60.

61.     Plaintiff took reasonable measures to maintain the secrecy and confidentiality of the Plaintiff's confidential and proprietary assets by instituting technology systems and policies to safeguard against conversion, unauthorized access, use, duplication, or reverse engineering. Such information cannot be publicly acquired or duplicated because of the limited number of individuals who can access the information, and the contractual limitations imposed on such individuals.

**ANSWER:** Lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 61, and therefore deny the allegations of paragraph 61.

62.     The Plaintiff's confidential and proprietary assets at issue were not generic lists or compilations of publicly available data, but rather proprietary data developed by proprietary channels. As such, this information is extremely valuable to Plaintiff, critical to the operation of Plaintiff's business, and, if available to others, would enable them to compete with Plaintiff to Plaintiff's detriment.

**ANSWER:** Lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 62, and therefore deny the allegations of paragraph 62.

63. Defendants knowingly and improperly obtained and disclosed the Plaintiff's confidential and proprietary assets in violation of the agreement and understanding with Plaintiff, duties to Plaintiff, and under the applicable laws, rules and regulations.

**ANSWER:** Deny allegations contained in paragraph 63.

64. Defendants used improper means to acquire knowledge of the Plaintiff's confidential and proprietary assets

**ANSWER:** Deny allegations contained in paragraph 64.

65. Defendants' conduct constitutes knowing, willful, and malicious misappropriation.

**ANSWER:** Deny allegations contained in paragraph 65.

66. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has been substantially and irreparably harmed in an amount not readily capable of determination. Unless restrained by this Court, Defendants will cause further irreparable injury to Plaintiff.

**ANSWER:** Deny allegations contained in paragraph 66.

67. Plaintiff is entitled to injunctive relief enjoining Defendant, its agents and employees, and all persons acting in concert or participation with it, from engaging in any further use of Plaintiff's proprietary and confidential information and trade secrets.

**ANSWER:** Deny allegations contained in paragraph 67.

68. As a result of Defendants' actions, Plaintiff has suffered direct and consequential damages, and is entitled to recover compensatory damages, including opportunity costs and enhanced damages in an amount to be proven at trial.

**ANSWER:** Deny allegations contained in paragraph 68.

## COUNT TWO
### (Illinois Trade Secrets Act 765 ILCS 1065)

69.     Plaintiff repeats and realleges each and every allegation contained in the prior paragraphs of this Complaint as if fully set forth at length herein.

**ANSWER:**     Answering paragraph 69, Defendants incorporate responses to the prior paragraphs as though set forth in full herein.

70.     Without Plaintiff's consent and in violation of the Illinois Trade Secret Act, 765 Ill. Comp. Stat 1065/1, et. seq., Defendants have misappropriated the Customer Needs and Requirements, although Defendants have been obligated to maintain the secrecy of this information.

**ANSWER:**     Deny allegations contained in paragraph 70.

71.     Defendants, through the Insider Group, were exposed to, had knowledge concerning and compiled information about Plaintiff and Plaintiff's customers, including Customer Needs and Requirements, from which Plaintiff derived significant economic and competitive advantages. These Plaintiff's confidential and proprietary assets have independent economic value.

**ANSWER:**     Deny allegations contained in paragraph 71.

72.     By virtue of Defendants' business relationship with Plaintiff, Defendants acquired access to assets, albeit not from their customer databases and repositories, under circumstances giving rise to a duty to maintain the secrecy of such information.

**ANSWER:**     Deny allegations contained in paragraph 72.

73.     By virtue of Defendants' Sales Representative Relationship with Plaintiff, and its oral contract with Plaintiff, Defendants owed a duty to refrain from using the Plaintiff's confidential and proprietary assets in a manner adverse to the interests of Plaintiff.

**ANSWER:**     Deny allegations contained in paragraph 73.

-18-

74.     In spite of this duty, Defendants has misappropriated and/or used the Plaintiff's confidential and proprietary assets including, but not limited to, customer lists, and proprietary customer information, and further misappropriated such Plaintiff's confidential and proprietary assets by, upon information and belief, making such Plaintiff's confidential and proprietary assets available to third-parties, including Circul-Air.

**ANSWER:**     Deny allegations contained in paragraph 74.

75.     Such misappropriation by Defendants occurred during, and after, the time that it had a business relationship with Plaintiff, and had been done for the express benefit of Defendant.

**ANSWER:**     Deny allegations contained in paragraph 75.

76.     Such misappropriation of these Plaintiff's confidential and proprietary assets were done without Plaintiff's consent, or permission.

**ANSWER:**     Deny allegations contained in paragraph 76.

77.     In violation of the Act, Defendants have disclosed and/or used (for the benefit of itself) the Plaintiff's confidential and proprietary assets in order to contact, broker, solicit, and/or submit proposals for Plaintiff's customers, and for customers Defendants worked with or had knowledge of while serving as Plaintiff's Sales Representative specifically.

**ANSWER:**     Deny allegations contained in paragraph 77.

78.     By soliciting Plaintiff's customers and using their Plaintiff's confidential and proprietary assets for the economic benefit of itself, Plaintiff used the Plaintiff's confidential and proprietary assets in the manner adverse to the best interests of Plaintiff, all in violation of the Act.

**ANSWER:**     Deny allegations contained in paragraph 78.

79.     Defendants willfully and maliciously misappropriated Plaintiff's confidential and proprietary assets in violation of the Act.

**ANSWER:**   Deny allegations contained in paragraph 79.

80.   As a direct, proximate, and intended and/or inevitable result of the actions of the Defendant, Plaintiff will suffer irreparable harm if Defendants are not enjoined from continued use of Plaintiff's confidential and proprietary assets.

**ANSWER:**   Deny allegations contained in paragraph 80.

81.   Because of the irreparable nature of the harm to Plaintiff, the most adequate remedy is a Court Order (i) enjoining Defendants from further soliciting, interfering, or entering any contracts with any of Plaintiff's customers for a period of two years, and (ii) enjoining from using any of Plaintiff's confidential and proprietary assets for any reason.

**ANSWER:**   Deny allegations contained in paragraph 81.

82.   As a direct, proximate, and intended and/or inevitable result of Defendants' ongoing actions in violation of the Act, Plaintiff has suffered lost future and past profits, lost corporate opportunities, and past, present, and future injury to its goodwill and has been damaged in an amount to be determined at trial.

**ANSWER:**   Deny allegations contained in paragraph 82.

83.   Thus, Plaintiff is also entitled to all other damages or remedies available to it, including but not limited to, exemplary damages in twice the amount of the award and attorney's fees to the full extent of the law because of Defendants' knowing, willful, malicious and intentional conduct.

**ANSWER:**   Deny allegations contained in paragraph 83.

84.   Plaintiff is also entitled to damages reflecting the amount that Defendants has been unjustly enriched by the misappropriation of Plaintiff's confidential information and proprietary Plaintiff's confidential and proprietary assets.

**ANSWER:**   Deny allegations contained in paragraph 84.

## COUNT THREE
### (Unjust Enrichment)

85.     Plaintiff repeats and re-alleges each of the factual allegations set forth in this Complaint as if set forth herein.

**ANSWER:**     Answering paragraph 85, Defendants incorporate responses to the prior paragraphs as though set forth in full herein.

86.     Through their unauthorized use, disclosure, and retention of the Plaintiff's proprietary assets, including, but not limited to, customer requirements, Defendants received significant benefits at the expense of Plaintiff

**ANSWER:**     Deny allegations contained in paragraph 86.

87.     Because Defendants did not bargain for or otherwise compensate Plaintiff for the proprietary Plaintiff's confidential and proprietary assets, which were developed by Plaintiff at its expense, Defendants have been unjustly enriched. It would be unjust for Defendants to retain the benefit of the proprietary Plaintiff's confidential and proprietary assets without paying to Plaintiff the value of the benefit conferred.

**ANSWER:**     Deny allegations contained in paragraph 87.

## COUNT FOUR
### (Injunctive Relief)

88.     Plaintiff repeats and re-alleges each of the factual allegations set forth in this Complaint as if set forth herein

**ANSWER:**     Answering paragraph 88, Defendants incorporate responses to the prior paragraphs as though set forth in full herein.

89.     Plaintiff seeks a preliminary and permanent injunction barring Defendants from using and disclosing Plaintiff's confidential and proprietary assets to any third-party.

**ANSWER:** Deny allegations contained in paragraph 89.

90. Defendants' unauthorized use and disclosure of Plaintiff's confidential and proprietary assets, among other things, constitutes misappropriation of trade secrets under the Defense of Trade Secrets Act.

**ANSWER:** Deny allegations contained in paragraph 90.

91. Defendants' activities threaten Plaintiff with immediate and irreparable harm in that Defendants' continued use and disclosure of Plaintiff's confidential and proprietary assets will diminish the value of this information and Plaintiff's investment therein, and cause Plaintiff to suffer a loss of business. For Plaintiff to be made whole, Plaintiff must regain the exclusive use of its Plaintiff's confidential and proprietary assets, proprietary documents and confidential information, which form the basis of its competitive edge in the marketplace.

**ANSWER:** Deny allegations contained in paragraph 91.

## COUNT FIVE
**(Tortious Inducement of Breach of Fiduciary Duty and Duty of Loyalty)**

92. Plaintiff repeats and re-alleges each and every factual allegation set forth in this Complaint as if set forth herein

**ANSWER:** Answering paragraph 92, Defendants incorporate responses to the prior paragraphs as though set forth in full herein.

93. During Defendants' business relationship with Plaintiff, Defendants induced the Insider Group to acquire knowledge of Plaintiff's Customer Needs and Requirements.

**ANSWER:** Deny allegations contained in paragraph 93.

94. Plaintiff was entitled to place its trust and confidence in the Insider Group, and Plaintiff did rely on Defendants faithfully performing their obligations consistently with their duties.

**ANSWER:**    Lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 94, and therefore deny the allegations of paragraph 94.

95.    Defendants had actual knowledge of the Insider Group's fiduciary obligations to Plaintiff.

**ANSWER:**    Lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 95, and therefore deny the allegations of paragraph 95.

96.    As a direct and proximate cause of Defendants' tortious inducement, including, but not limited to, upon information and belief, bribing (financially and otherwise) Insider Group to misappropriate the Customer Needs and Requirements, Plaintiff has been and is being harmed, and faces risk of irreparable harm.

**ANSWER:**    Deny allegations contained in paragraph 96.

### COUNT SIX
### (Breach of Contract)

97.    Plaintiff repeats and re-alleges each of the factual allegations set forth in this Complaint as if set forth herein

**ANSWER:**    Answering paragraph 97, Defendants incorporate responses to the prior paragraphs as though set forth in full herein.

98.    Defendant, as discussed *supra*, had an enforceable agreement with Plaintiff.

**ANSWER:**    Deny allegations contained in paragraph 98, noting allegation does not specify "Defendant."

99.    Defendant, as discussed *supra*, breached his contract with Plaintiff.

**ANSWER:**    Deny allegations contained in paragraph 98, noting allegation does not specify "Defendant."

100.    Plaintiff performed all obligations pursuant to the Contract.

**ANSWER:**   Deny allegations contained in paragraph 98, noting allegation does not specify "Defendant."

101.   As a result of such breach of contract, Defendants has caused Plaintiff an amount of damages to be proven at trial.

**ANSWER:**   Deny allegations contained in paragraph 98.

## COUNT SEVEN
### (Defamation)

102.   Plaintiff repeats and realleges all the factual allegations of the Complaint as if set forth at length herein.

**ANSWER:**   Answering paragraph 102, Defendants incorporate responses to the prior paragraphs as though set forth in full herein.

103.   With the statements discussed *supra*, Defendants have made false statements with a reckless disregard for their truth or accuracy to third-parties with which Plaintiff does business that relate directly to the Plaintiff's ability to conduct its business with such third parties. Plaintiff has been harmed, presumptively, under the law, and, actually, by such statements through the loss of reputation, goodwill and current and future business

**ANSWER:**   Deny allegations in paragraph 103.

## COUNT EIGHT[2]
### (   )

## COUNT NINE
### (Unjust Enrichment)

104.   Plaintiff repeats and realleges all the factual allegations of the Complaint as if set forth at length herein.

---

[2] The Complaint filed by Plaintiff fails to include a Count Eight. To the extent additional allegations are asserted, Defendants deny any said allegations.

**ANSWER:** Answering paragraph 104, Defendants incorporate responses to the prior paragraphs as though set forth in full herein.

105. Defendants knew of the longstanding contracts that the Plaintiff had with distributors – some of which are named in this Complaint.

**ANSWER:** Deny allegations contained in paragraph 105.

106. The Defendants maliciously interfered with such contracts by, among other things, lying about the solvency, and business operations of Groves and contending that Groves did not have the capacity to further service each such distributors business needs.

**ANSWER:** Deny allegations contained in paragraph 106.

107. Plaintiff has been harmed, in fact, by loss of business with each such distributor, as well as loss of goodwill and reputation.

**ANSWER:** Deny allegations contained in paragraph 107.

As to any of the above allegations not specifically denied, Defendants deny same and put Plaintiff to its proof.

**WHEREFORE**, Defendants respectfully requests that the Court enter judgment as follows:

A. Dismissing Plaintiff's claims as contained in the Complaint.

B. Awarding Defendant its reasonable costs and fees, including attorney's fees.

C. Granting Defendant such other and further relief as the court deems just and proper.

## AFFIRMATIVE DEFENSES

For the affirmative defenses on behalf of responding Defendants, said Defendants state:

1. Plaintiff fails to state a claim against Defendants upon which relief may be granted.

2. Plaintiff has failed to properly serve one of more of said Defendants.

3. Venue is not proper in this district as to one or all Defendants.

-25-

4.      Plaintiff's claims are barred in whole or in part by the doctrine of estoppel.

5.      Plaintiff's claims may be barred in whole or in part because Plaintiff consented to any conduct alleged in the Complaint.

6.      Plaintiff's claims may be barred in whole or in part by the statute of limitations.

## COUNTERCLAIMS

For its counterclaims against Plaintiff, Defendant R.C. Bremer Marketing Associates, Inc. (R.C. Bremer) states as follows:

1.      R. C. Bremer is an Illinois corporation having its principal place of business at 6127 Green Bay Road, Suite 150, Kenosha, WI 53142.

2.      R. C. Bremer is in the business of marketing and serving as a sales representative of manufacturers of industrial, safety and fire products that sell products exclusively to and through distribution.

3.      R. C. Bremer's sales team covers the Midwest region of the United States and represents top manufacturers that offer innovative, quality products and offers.

### COUNT I
### (Breach of Contract)

4.      R. C. Bremer restates the allegations set forth in paragraphs 1-3 above, as if fully set forth herein.

5.      R. C. Bremer signed a Sales Representative Agreement with Plaintiff that become effective on June 1, 1995, and is attached to the Complaint filed by Plaintiff and marked as Exhibit A.

6.      For years, pursuant to that Sales Representative Agreement, R. C. Bremer sold Plaintiff's products and earned commissions based on those sales as provided in Paragraph two of that agreement.

7. Prior to the termination of the Sales Agreement on or about March 8, 2022, R.C. Bremer earned approximately Thirteen Thousand Six Hundred and Sixty-Eight Dollars and Seventy-Six Cents ($13,668.76) in commissions in January 2022, and commissions in February 2022 that R. C. Bremer has been unable to calculate due to Plaintiff's failure to provide R. C. Bremer with the February 2022 sales report.

8. In a letter to Plaintiff's counsel on March 17, 2022, R. C. Bremer, through its attorneys, demanded payment of these outstanding commissions, including but not limited to the $13,668,76 commissions owed.

9. Plaintiff has failed to pay the outstanding commissions owed to R. C. Bremer under the Sales Representative Agreement.

10. Plaintiff has refused to pay owed commissions to R. C. Bremer.

11. Plaintiff has the money and ability to pay R. C. Bremer.

12. By failing to pay earned commissions under the Sales Representative Agreement, Plaintiff has breached its contract.

**WHEREFORE**, Defendant-Counterclaim Plaintiff R. C. Bremer respectfully requests that the Court enter judgment as follows:

A. Dismissing Plaintiff's claims as contained in the Complaint.

B. As to Defendant-Counterclaim Plaintiff R. C. Bremer's First Counterclaim, awarding the actual and/or consequential damages for Plaintiff's breach of the Sales Representative Agreement in an amount to be determined, but in no event less than $13,668,76, plus interest, attorney's fees and costs and any other equitable or other relief this Court deems just and proper.

-28-

C.     Awarding Defendant-Counterclaim Plaintiff R. C. Bremer its reasonable costs and fees, including attorney's fees.

D.     Granting Defendant-Counterclaim Plaintiff R. C. Bremer such other and further relief as the court deems just and proper.

## JURY DEMAND

Defendant-counterclaim Plaintiff R. C. Bremer demands a trial by jury.

Dated this 7th day of June 2022.

By: */s/ Craig T. Papka*
        Craig T Papka, IL SBN 6287051
        Ryan Maloney
        Ann Barry Hanneman
        von BRIESEN & ROPER, s.c.
        1 North Franklin Ste. Ste. 2350
        Chicago, IL 60606
        Telephone: (262) 923-8672
        E-mail: craig.papka@vonbriesen.com
        E-mail: ryan.maloney@vonbriesen.com
        E-mail: ann.hanneman@vonbriesen.com

**Attorneys for Defendants**

38187923_1.DOCX